# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

DENISE L. BERNS,

                Claimant,

vs.

ANDREW M. SAUL,

Commissioner of Social Security,[1]

                Defendant.

No. 18-CV-2068-LTS

**REPORT AND RECOMMENDATION**

_____

Plaintiff Denise L. Berns ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the District Court **affirm** the Commissioner's decision.

## I.  BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 14) and only summarize the pertinent facts here. This is an appeal from a denial of disability insurance benefits ("DIB"). Claimant was born on August 1, 1955. (AR[2] at 218.) Claimant is a high school graduate. (_Id._ at 261.) She allegedly became disabled due to

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

[2] "AR" cites refer to pages in the Administrative Record.

autoimmune disease; arthritis; vision loss; muscle pain; slow digestion; fatigue; dry mouth, throat, and lungs; chronic bronchitis; spinal pain; skin lesions; and trigeminal pain. (*Id.* at 260.) Claimant's original alleged onset of disability date was March 1, 2014. (*Id.* at 218.) On October 12, 2017, her alleged onset of disability date was amended to June 1, 2015. (*Id.* at 88.) Claimant filed an application for DIB on April 9, 2015. (*Id.* at 218.) Claimant's last date insured is December 31, 2020. (*Id.* at 13.) Claimant's claim was denied originally and on reconsideration. (*Id.* at 148-51, 153-56.) A video hearing was held on October 12, 2017 with Claimant and her attorney, Hugh Field, in Waterloo, Iowa and ALJ Tom Andrews, vocational expert ("VE") Carmen Mitchell, and hearing monitor Pat Sears in West Des Moines, Iowa. (*Id.* at 61-115.) Claimant and the VE testified. (*Id.* at 66-113.) The ALJ issued an unfavorable decision on January 5, 2018. (*Id.* at 11-21.)

Claimant requested review and submitted additional evidence: medical records dated November 5, 2015 to November 20, 2017 and medical records dated January 22 to February 19, 2018. (*Id.* at 2.) The Appeals Council denied review on July 3, 2018 and refused to consider the new evidence. (*Id.* at 1-5.) The Council found that the first group of medical records did not show a reasonable probability they would change the outcome of the ALJ's decision. (*Id.* at 2.) The Council found that the second group of records was irrelevant because they addressed a time period after the ALJ's decision. (*Id.*)[3] Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On September 2, 2018, Claimant timely filed her complaint in this Court. (Doc. 1.) The case was originally assigned to then-Chief Magistrate Judge CJ Williams. (Doc. 2.) When Judge Williams was appointed as United States District Court Judge, the case

---

[3] Claimant does not appeal these decisions by the Appeals Council.

2

was reassigned to Chief District Court Judge Leonard T. Strand and me. On June 25, 2019, all briefing was completed and the Honorable Leonard T. Strand referred the case to me for a Report and Recommendation.

## II.    *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

3

"Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations.

4

*Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)).  RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1).  If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.  *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2).  The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy.  *Eichelberger*, 390 F.3d at 591 (citation omitted).

A.    **The ALJ'S Findings**

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status.

At step one, the ALJ found that Claimant had engaged in substantial gainful activity since her alleged onset of disability date.  (AR at 14.)  However, he also found that she had not engaged in substantial gainful activity for at least twelve months beginning July 1, 2015 through the date of his decision.  (*Id.*)

At step two, the ALJ found that Claimant suffered from the following severe impairments:  degenerative disc disease of the cervical and lumbar spine; osteoarthritis; migraines; and hip bursitis.  (*Id.*)  The ALJ also considered, but did not find disabling,

Claimant's alleged fibromyalgia, sicca syndrome,[4] and vision problems. (*Id.*) The ALJ found Claimant's depression and anxiety to be nonsevere impairments. (*Id.*)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.* at 15.)

At step four, the ALJ found that Claimant had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except may only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She cannot, however, climb ladders, ropes, or scaffolds, and she must not reach overhead more than occasionally bilaterally. In addition, she cannot finger or feel with her left, non-dominant hand more than frequently, and she must avoid concentrated exposure to extremes of cold, vibrating tools or machinery, and hazards, such as unprotected heights or dangerous, unguarded machinery.

(*Id.*) The ALJ further found Claimant is able to perform her past relevant work as a medical secretary both as actually and generally performed. (*Id.* at 20-21.)

Because the ALJ found there was work Claimant could perform at step four, he did not move on to step five of the analysis. Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 21.)

---

[4] Throughout the record, Claimant's healthcare providers use this term interchangeably with the term "Sjögren syndrome." The two conditions are similar, but not identical. Sicca syndrome consists of "keratoconjunctivitis and xerostomia without connective tissue disease." *Durland's Illustrated Medical Dictionary* 1848 (32d ed. 2012). Sjögren syndrome is "a symptom complex of unknown etiology usually appearing in middle-aged or older women, marked by the triad of keratoconjunctivitis sicca with or without lacrimal gland enlargement, xerostomia without salivary gland enlargement, and the presence of a connective tissue disease, usually rheumatoid arthritis but sometimes systemic lupus erythematosus, scleroderma, or polymyositis. An abnormal immune response has been implicated." *Id.*

**B.**     *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). The court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

### III.     DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) failing to properly evaluate her subjective complaints, (B) failing to fully and fairly develop the record

7

related to her physical RFC, and (C) failing to support his conclusion that she can perform her past relevant work with substantial evidence. Claimant further argues the ALJ was not appointed in a constitutional manner. Thus the ALJ's decision must be vacated and Claimant's case remanded so a properly-appointed ALJ may adjudicate the claim.

### A. *The ALJ properly evaluated Claimant's subjective complaints.*

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[5] An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective

_____

[5] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v), (vi).

complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (*citing Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

Claimant argues that the ALJ did not properly evaluate her subjective complaints of pain.[6] In her brief, Claimant makes the following argument related to her subjective complaints.

> The ALJ discussed the medical records and Ms. Berns [sic] daily activities and concluded Ms. Berns had no significant pain or fatigue-related limitations that would preclude the RFC determination. (TR 17-18). However, Ms. Berns had explained she had good and bad days, and her activities were more limited on bad days. Ms. Berns' limited daily activities were not inconsistent with her claimed limitations. *See Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000); *Brosnahan v. Barnhart*, 336 F.3d 671, 677-78 (8th Cir. 2003) (discussing activities and findings of fibromyalgia).

> The ALJ explained that "claimant asserts disability primary on the basis of her subjective complaints" with little objective evidence to corroborate her limitations. (TR 20). The objective medical record, which frequently noted fatigue and concentration complaints, and Ms. Berns' reported activities are reasonably consistent with a myriad of issues compounded by potential or actual fibromyalgia. (*See* TR 17 (the ALJ determined that fibromyalgia had never been verified)). In addition, Ms. Berns' depression and anxiety may

---

[6] Claimant proffers this argument in support of her argument that she is unable to perform her past relevant work. However, I find this is a threshold issue that must be resolved before reaching that issue. Because this argument was not specifically briefed, some of the issues Claimant raises are addressed in this section and some are addressed later.

have been contributing to her pain and fatigue symptoms, which further undermines the ALJ's reliance on an independent review of the examination findings while finding Ms. Berns had the residual functional capacity to perform her past relevant work as actually performed. (*See* TR 701-02).[7]

(Doc. 17 at 4-5.)   I interpret this as an argument that the ALJ improperly evaluated Claimant's daily activities and the objective medical evidence.

In this case, the ALJ found that Claimant's severe impairments significantly limited her ability to perform basic work activities.  (AR at 14.)  However, the ALJ also found that

> [d]espite the claimant's allegations, after consideration of [the *Polaski*] factors, the undersigned finds the claimant likely retains the ability to perform light work as described in the above-listed residual functional capacity assessment.  Specifically, the claimant's sparse but effective psychological care, mental status and physical examination results, the lack

---

[7] Claimant's citation to AR 701-02 is confusing.  These pages of the record contain the report of Claimant's December 7, 2015 neuropsychology consult with Dr. Daniel T. Tranel. The results of Dr. Tranel's testing showed that Claimant endorsed symptoms of mild depression and severe anxiety, and "described pain-related beliefs, attitudes, and coping skills consistent with individuals with chronic pain who have not participated in a comprehensive, multidisciplinary training program."  (AR at 701)  Dr. Tranel also noted that Claimant's MMPI-2 profile showed "a preoccupation with somatic complaints and a preference for medical, rather than psychological, interpretations of symptoms."  (*Id.*)  Dr. Tranel recommended that Claimant be referred to a psychologist to treat her depression and anxiety and "to develop behavioral pain management strategies."  (*Id.* at 702.)  He also recommended "regular physical activity for her cognitive and emotional health.  She should discuss appropriate exercise with her primary care physician."  (*Id.*)  There is no indication in the record that Claimant followed up on either of these suggestions, which undermines Claimant's claims.  *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("failure to follow prescribed medical treatment without good cause is a basis for denying benefits") (citing *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).  In fact, Claimant took issue with Dr. Tranel's conclusions and told Dr. Lydia Mustafic that Dr. Tranel thought everything was in her head.  (AR at 78, 846.)  The ALJ told Claimant that while everyone has their own perceptions, he did not believe that Dr. Tranel was saying that everything was in Claimant's head.  (*Id.* at 79.)  The ALJ, on the other hand, did not rely on Dr. Tranel's consult in his decision.  Rather, he relied on the opinion of independent examining consultant Carroll Roland, Ph.D.  (*Id.* at 19-20.)

of a valid fibromyalgia diagnosis, the claimant's admissions, and the implications of her daily activities suggest she can perform light work, without the need for psychological accommodations.

Indeed, the claimant attributes most of her alleged dysfunction to joint pain and Sjogren's syndrome, but also notes fibromyalgia, arthritis, and spinal degeneration as contributors to her symptoms. However, the undersigned found insufficient evidence of a valid fibromyalgia diagnosis, suggestion of adequate Sjogren's control, relatively mild radiographic findings, and good physical examination results that suggest functioning beyond the level the claimant contends.

(*Id.* at 17.) Claimant asserts that her stable work history supports her credibility. Claimant is correct. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (quoting *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998)). However, work history is but one consideration when weighing Claimant's credibility.

I find that the ALJ properly considered and evaluated Claimant's daily activities. The ALJ noted that "[C]laimant reported she prepares meals two to three times per week, cleans, gardens in good weather, shops in stores, drives, paints as a hobby, attends weekly Bible studies, goes to her grandchildren's sporting events, can pay bills and count change, and lunches with friends on a monthly basis." (*Id.* at 18.) For support, the ALJ cited Claimant's adult function report. (*Id.* at 272-77.) At the hearing, Claimant testified that she can do most housework every day except pick up heavy things and put things over her head. (*Id.* at 80.) Claimant also testified that she can open "easy" jars, but has her husband open the ones that are too difficult for her to open. (*Id.* at 97.) Claimant manages her own medications and independently handles all aspects of her personal care, although she does not bathe as often as she used to because of fatigue. (*Id.* at 273, 701.) Claimant testified that she is able to walk four blocks at a leisurely pace. (*Id.* at 91.) These daily activities support Claimant's RFC. As the ALJ noted, Claimant's ability to partake in these activities also indicates that she can get along with others and has "no

more than mild problems in social interactions." (*Id.* at 19.) The ALJ also properly concluded that Claimant's ability to partake in these daily activities demonstrates that Claimant retains important work-related abilities: the ability to comprehend, recall, and carry out the instruction necessary for completion of multistep tasks; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage herself. (*Id.*)

The ALJ also properly considered and evaluated the objective medical evidence in the record. The ALJ concluded that although Claimant had various severe impairments, they did not interfere with her functioning to the extent that she claimed. For example, Claimant's migraines were severe, but Claimant testified that her medication works, although it makes her tired. (*Id.* at 89-90.) Claimant's main complaints are based on pain and fatigue due to effects of sicca syndrome, "potential or actual fibromyalgia," and "depression and anxiety [that] may have been contributing to her pain and fatigue symptoms." (Doc. 17 at 5.) However, the ALJ correctly found that the objective medical evidence does not support a finding that these conditions affect Claimant to the extent she claims.

During medical examinations, Claimant consistently had normal gait; normal range of motion on examination; normal mood, affect and behavior; was not nervous or anxious; and was oriented to person and place. *See, e.g.* (*id.* at 456-57, 464-65, 615, 620, 623, 628, 719, 722, 797, 835, 870, 971.) Claimant's primary care physician, who prescribes her anti-depressants, noted on April 12, 2017 that Claimant's depression is well-controlled. (*Id.* at 864.) These findings were consistent even when Claimant presented to physicians for pain and alleged gait issues. One treatment note does document significant knee pain and difficulty bearing weight with that knee. (*Id.* at 836.) However, that note is associated with a knee injury, not a chronic condition. (*Id.* at 838.) On March 8, 2017, Claimant presented to Dr. Mustafic complaining about back pain and ear pain. (*Id.* at 859.) In her treatment notes, Dr. Mustafic stated that Claimant's

musculoskeletal examination results were "positive for myalgias,[8] back pain and arthralgias.[9] Negative for neck pain." (*Id.*) Claimant refused physical therapy on that day. (*Id.*) Claimant's neurological examination on that day was positive for weakness, but negative for numbness and headaches. (*Id.*) In spite of this note, the overwhelming evidence—substantial evidence on the record as a whole—supports the ALJ's decision.[10]

Claimant cites several pages of the record in support of her argument that pain and fatigue were limiting her ability to function. (Doc. 17 at 6.) I have reviewed the pages cited by Claimant. The pages she cites all include self-reports of pain and/or fatigue symptoms. (AR at 617-20, 574, 846-49, 966-68, 970-72.) Where physicians did physical examinations, they reported normal results and did not document limited or painful movement. Some of the pages cited by Claimant, however, require discussion.

AR 574 is part of the opinion of consulting psychologist Carroll Roland, Ph.D. Dr. Roland examined Claimant on September 10, 2015. (*Id.* at 574-78.) Claimant's presenting problem was "fatigue . . . not being able to focus." (*Id.* at 574 (ellipses in original).) Claimant also reported "continuous pain in 'joints. . . all of them.'" (*Id.* (ellipses in original).) Dr. Roland opined that Claimant's "memory and intellect are sufficient for employment purposes." (*Id.* at 578.) Dr. Roland further opined that Claimant's "primary deterrent to competitive employment appears to be her medical condition with resulting physical limitations and pain." (*Id.*) Claimant cites the first page of this opinion, where Claimant reported her symptoms or complaints to Dr. Roland and where Dr. Roland summarized Claimant's medical history, including "sicca syndrome, myalgia, joint and muscle pains." (*Id.*) I am not certain how this citation is

---

[8] Myalgia is "pain in a muscle or muscles." *Durland's*, *supra* note 4, at 1214.

[9] Arthralgia is "pain in a joint." *Id.* at 150.

[10] An additional treatment note documents myalgia in Claimant's knee. However that note is dated two days after Claimant's knee injury and the doctor's conclusion was that the pain was related to a knee injury. (AR at 871.)

helpful to Claimant. To the extent Claimant meant to cite to Dr. Roland's opinion that Claimant's physical impairments were the cause of her work-related limitations, the ALJ correctly concluded that Dr. Roland is not qualified to render such an opinion. (*Id*. at 20.) As a psychologist, Dr. Roland does not treat physical problems. (*Id*.)

In January 2017, Claimant saw Dr. Chitavathi Yerrapareddy regarding hypothyroidism. (*Id*. at 965-69.) Dr. Yerrapareddy noted Claimant's history of fatigue and aches and pains. (*Id*. 967-68.) Dr. Yerrapareddy planned to check Claimant's cortisol, hormone, and thyroid levels. (*Id*.) Claimant returned to Dr. Yerrapareddy on July 10, 2017 for medication management related to fatigue and hypothyroidism. (*Id*. at 971-73.) Dr. Yerrapareddy noted at that time that Claimant was "getting worked up for fibromyalgia." (*Id*. at 972.) She encouraged Claimant to continue strength and flexibility exercise. (*Id*.)

Dr. Yerrapareddy's July treatment note is the most-recent treatment note in the record. After a thorough review of the record, I find the ALJ's conclusion that there is no diagnosis of fibromyalgia in the record and that "different sources appear to have assumed others made the fibromyalgia diagnosis, without verifying it" supported by the record as a whole. (*Id*. at 17.) Dr. Yerrapareddy's treatment note, indicating that Claimant was in the processes of trying to obtain a fibromyalgia diagnosis, written only three months prior to the hearing, supports this conclusion. My evaluation of the record further supports the ALJ's conclusion that no physical examination diagnosed "widespread pain" as defined in SSR 12-2p. (*Id*.) As the ALJ noted, Claimant has other severe impairments that "could conceivably explain her complaints—sicca, or Sjogren's syndrome, as well as osteoarthritis and spinal degenerative disc disease." (*Id*.) Nevertheless, the claimant's rheumatologist . . . characterized the symptoms associated with siccas as "controlled" in October 2015. (*Id*.) Claimant, herself, does not seem to feel strongly about her fibromyalgia diagnosis, speculating that her reported activities are

"reasonably consistent with a myriad of issues compounded by potential or actual fibromyalgia." (Doc. 17 at 5.) This vague assertion will not suffice.

Moreover, as the ALJ noted, objective radiographic imaging does not support a diagnosis of a pain disorder as debilitating as Claimant asserts. On October 22, 2013, cervical MRI results noted only mild facet hypertrophy at three discs and only mild foraminal narrowing. (*Id*. at 345.) Similarly, a May 2016 cervical MRI showed only minimal disk degenerative changes. (*Id*. at 616.) A July 2014 lumbar MRI showed neural foraminal stenosis at L4-5, "which can cause paresthesias in the lower extremities."[11] (*Id*. at 457.) However, Claimant was doing well without further intervention at the time and Dr. Shah continued her on a course of exercises, reserving epidural injections or surgery if symptoms increased. (*Id*.) A subsequent lumber MRI in October 2014 showed normal results. (*Id*. at 465.) Claimant was referred for physical therapy. (*Id*.) Claimant had hip x-rays in September 2014 that showed "unchanged mild bilateral hip joint osteoarthritis" and "no evidence of acute fracture or malalignment." (*Id*. at 515.) A May 2015 EMG of Claimant's right arm showed normal results with only "subtle evidence of right C8 radiculopathy." (*Id*. at 476.) "No evidence of mononeuropathy and clinical correlation [were] required." (*Id*.) These results support the ALJ's RFC and indicate that Claimant's healthcare providers suggested only conservative treatments based on their results. A conservative course of treatment can weigh against a claim of disabling impairment. *See Milam*, 794 F.3d at 984. In addition, just as there is no indication that Claimant followed up with Dr. Tranel's suggestion to seek therapy,[12] there are no records indicating that Claimant ever went to physical

---

[11] Paresthesia is "[a] spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking); it may be due to lesions of both the central and peripheral nervous systems." *Stedman's Medical Dictionary* 1425 (28th ed. 2006).

[12] *See, supra* note 7.

therapy, which also undermines her claims. *See Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004).

Finally, in her reply, Claimant cites *Brosnahan v. Barnhart*, 336 F.3d 671 (8th Cir. 2003) for the proposition that consistent trigger-point findings and consistent complaints of variable unpredictable pain, stiffness, and fatigue are "the objective medical evidence of fibromyalgia and these were present" in her treatment records. (Doc. 19 at 3-4 (citing *Brosnahan* 336 F.3d at 677-78; AR 978-79).) To the extent Claimant seeks to analogize her case to *Brosnahan*, I find her case distinguishable. In *Brosnahan*, the claimant had not only been diagnosed with fibromyalgia, but also had consistent trigger-point findings over multiple trigger points and had tried medications, trigger point injections, physical therapy, and exercise to relieve her symptoms. 336 F.3d at 673-74, 678. As discussed above, Claimant does not have a fibromyalgia diagnosis, has only tried conservative treatments, and seemingly has not followed through with recommended physical therapy. The treatment note Claimant cites at AR 978-79 states that Claimant reported paresthesia. Although tenderness was noted at Claimant's cervical, lumbar and sacral spine segments; sacral joint bilaterally; and in Claimant's digits and thumbs, most of the other results were normal. (*Id.* at 979.) Claimant did have crepitus in some joints (noise during joint movements, such as a cracking, popping, snapping, or grinding), however Dr. Palma diagnosed only sicca syndrome, degenerative disk disease, generalized osteoarthritis, and a history of vitamin D deficiency. (*Id.*) There was no mention of trigger points or fibromyalgia. Thus, the facts of this case are clearly different form the facts of *Brosnahan*.

Claimant also cites SSR 12-2p, which explains the 1990 and 2010 criteria for evaluating claims based on fibromyalgia. (Doc. 19 at 3.) Claimant, however, does little more than cite this ruling, expect to note that "tender points were central to the 1990 and

a history of widespread pain is required for the 2010 criteria." (*Id.*) Claimant then argues the following:

> While Ms. Berns' fibromyalgia diagnosis could be more firmly established in the record, Ms. Berns' pain and fatigue issues, well documented in the record, were precluding Ms. Berns' ability to perform her past work during the relevant period. (*See* TR 67). Ms. Berns [sic] suspected fibromyalgia was one cause of her pain and fatigue issues, but other impairments, including those found by the ALJ to be severe, were reasonably contributing as well. (*See* TR 14; 702 (explaining that psychological factors were significant and had a reciprocal relationships with difficulties with pain, sleep and fatigue, which contributed to her reported cognitive difficulties)). Regardless the cause, the combination of her impairments prevented Ms. Berns' from performing her past relevant work as actually performed.

(*Id.*)  First, both the 1990 and 2010 criteria for evaluation fibromyalgia are more multi-faceted than Claimant seems to assert.  "Trigger point tenderness" is only one aspect of the 1990 fibromyalgia evaluation criteria.  "Widespread pain" is only one aspect of the 2010 fibromyalgia evaluation criteria.  *See* SSR 12-2p.  Thus, having those symptoms, alone, does not indicate that Claimant has fibromyalgia.  Second, and more importantly, Claimant seems to concede what the ALJ found: that Claimant's other documented impairments cause her pain.  (*Id.* at 17 (finding that sicca, osteoarthritis, and spinal degenerative disc disease could explain Claimant's complaints).)  However, as discussed above, the objective medical evidence and Claimant's daily activities are inconsistent with a finding of disability based on those other impairments.

I find that while the ALJ did not do an in-depth analysis of the other *Polaski* factors, his decision indicates that he at least considered the other factors when evaluating Claimant's case.  I therefore find no error in the ALJ's evaluation of any other *Polaski* factor.  Accordingly, I find that the ALJ properly considered and evaluated Claimant's subjective complaints.

17

**B.      The ALJ fully and fairly developed the record regarding Claimant's physical RFC.**

The "social security hearing is a non-adversarial hearing, and the ALJ has a duty to fully develop the record." *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)).  The ALJ bears this responsibility "independent of the claimant's burden to press his case" and it extends to cases where claimants are represented by counsel at the administrative hearing. *Stormo*, 377 F.3d at 806.  However, the Eighth Circuit has held:

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (internal citations omitted).  The inquiry is whether the claimant "was prejudiced or treated unfairly by how the ALJ did or did not develop the record." *Onstad v. Shalala*, 999 F.3d 1232, 1234 (8th Cir. 1993).  Absent unfairness or prejudice, remand is not required. *Id.* (citing *Phelan v. Bowen*, 846 F.2d 478, 481 (8th Cir.1988)).  The ALJ must determine a claimant's RFC "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).

"Because [a] claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted).  "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citing *Myers*, 721 F.3d at 526-27) (affirming RFC without

18

medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). Although Claimant bears the burden to "provid[e] the evidence [the Court] will use to make a finding about [Claimant's] residual functional capacity," the Court is "responsible for developing the claimant's complete medical history." 20 C.F.R. § 404.1545(a)(3) (2019). "The ALJ's obligation to develop the record 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Coleman v. Colvin*, No. 13cv1004 EJM, 2013 WL 4069523, at *2 (N.D. Iowa Aug. 12, 2013) (quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)); *Martin v. Berryhill*, No. 1:18-CV-00004 JM/PSH, 2019 WL 138655, at *6 (E.D. Ark. Jan. 8, 2019) (explaining that "the ALJ must weigh the various medical opinions in the record") (citation omitted), *R. & R. adopted*, 2019 WL 334202 (E.D. Ark. Jan. 25, 2019). "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment." SSR 96-4p.

Claimant argues that the ALJ did not fully and fairly develop the record regarding her physical RFC. Specifically, Claimant asserts that the ALJ should have obtained a treating or examining physician's opinion regarding how "the combination of [her] impairments, causing distracting and limiting pain and fatigue, impacted [her] ability to work." (Doc. 19 at 5.)

Claimant relies on *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017) to argue that an ALJ must not rely on his own inferences from medical opinions when weighing

medical evidence (Doc. 17 at 6.) In *Combs*, the court held that the ALJ did not fulfill his duty to fully and fairly develop the record because the ALJ relied "on his own inferences as to the relevance of the notations 'no acute distress' and 'normal movement in all extremities' [in treatment notes] when determining the relative weight to assign" state agency physicians' opinions. 878 F.3d at 647. On appeal, the Commissioner conceded that "no acute distress" was "of no particular significance with a chronic condition" such as the claimant's. *Id*. The record in the case contained no opinion from a treating or examining physician and the two agency physicians who reviewed the record came to different conclusions regarding the claimant's RFC. *Id*. at 646. The ALJ chose to credit the least-restrictive of the two opinions. *Id*. The court remanded the case so the ALJ could "conduct further inquiry as to what relevance Combs' being in 'no acute distress' and having 'normal movement of all extremities' [had] for her ability to function in the workplace." *Id*. at 647. Claimant asserts that the ALJ in this case "relied on his own inferences from medical records in order to . . . discount fibromyalgia as an impairment and craft an RFC without the aid of a treating or examining opinion concerning Ms. Berns' physical limitations." (Doc. 17 at 6.)

The Commissioner responds that the ALJ fully developed the record and that the record contained "sufficient evidence for the ALJ to make an informed decision" because the ALJ considered not only the state agency opinions, which were consistent with the record as a whole, but also objective medical findings. (Doc. 18 at 19.) The Commissioner notes that *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000), cited by Claimant, only requires remand when the record contains no medical evidence supporting the ALJ's decision, which is not the situation with the case at bar. (*Id*. at 20.) The Commissioner also argues that *Combs* can be distinguished from the case at bar because in *Combs*, notations of "no acute distress" were not relevant to the claimant's ability to function in the workplace. However, in this case, "the ALJ relied on findings that

contradicted [Claimant's] allegations. These findings included [Claimant's] normal examination findings, her activities of daily living, the normal to mild findings on diagnostic imaging, and the lack of a valid fibromyalgia diagnosis." (*Id.* at 21-22.)

In this case, the record contained opinions from two state agency reviewing physicians. (*Id.* at 125-30, 142-45.) Melodee Woodward, M.D., reviewed the record on September 4, 2015 and found Claimant's claims were disproportional to the objective evidence. (*Id.* at 128.) Dr. Woodard noted that Claimant had full range of motion and no neurological deficits on her neurological exam. (*Id.*) In relevant part, Dr. Woodward found that Claimant had the RFC to walk six hours a day, sit six hours a day, frequently lift or carry ten pounds, occasionally lift or carry twenty pounds, and had limited ability to reach in any direction. (*Id.* at 125-26.) On reconsideration, Tracey Larrison, D.O., reviewed the record, including medical records that had been added to the record after Dr. Woodward's initial review, and affirmed Dr. Woodward's assessment. (*Id.* at 145.)

State agency psychologists also reviewed the record.[13] On initial review, Michael Becker, Ph.D. concluded that a preponderance of the evidence indicated that Claimant suffered "no more than mild functional impairment" from her unspecified depressive disorder and that her depression was, therefore, nonsevere. (*Id.* at 123.) On reconsideration, Myrna Tashner, Ed.D., reviewed the record and noted that although symptoms of anxiety and depression were present, the initial assessment remained appropriate and she affirmed the assessment as written. (*Id.* at 140.)

---

[13] Although Claimant asserts the ALJ failed to develop the record related only to her physical RFC, she bases this argument on her fibromyalgia claim. Claimant asserts that her fibromyalgia contributes to her psychological symptoms and sleep disturbances. (Doc. 19 at 3.) She also states that a treating or examining physician is required to assess, in part, how her impairments cause her to be distracted. (*Id.* at 5.) Therefore, it is appropriate to assess the ALJ's consideration of all medical opinions at this juncture, especially because the ALJ ties the two together. *See* (AR at 20 ("State agency medical and psychological consultants also determined the clamant would be capable of light work, without significant mental accommodations.").)

The ALJ gave these opinions great weight, noting that the state agency medical and psychological consultants determined that Claimant was capable of light work without significant mental accommodations. (*Id.* at 20.) The ALJ also stated that the opinions were consistent with other factors he analyzed, including "the questionable nature of the claimant's fibromyalgia diagnosis, indication of well-controlled sicca and depression, intact physical and mental status exam results since she ceased substantial gainful activity, and the implications of her daily activities." (*Id.*)

The ALJ also gave Dr. Roland's opinion great weight regarding Claimant's mental capabilities, noting that the opinion was consistent with Claimant's treating source opinion, which stated that her depression was well-controlled. (*Id.* at 19 (citing *id.* at 864).) In addition, the ALJ found the opinion in concert with Claimant's daily activities, and Dr. Roland's own mental status examination results. (*Id.*) The ALJ also noted Claimant's "sparse treatment history for depression and anxiety." (*Id.*) The ALJ gave Dr. Roland's opinion that Claimant's "primary deterrent to competitive employment appears to be her medical condition with resulting physical limitations and pain" little weight because Dr. Roland does not specialize as medical doctor or other source who treats physical problems. (*Id.* at 20.)

Claimant does not take issue with how the ALJ weighed any of this opinion evidence.[14] In addition to these opinions, the ALJ cited to treatment notes from the record, objective radiographic test results, Claimant's daily activities, and Claimant's

---

[14] The record also contains a single-question yes/no answer "opinion" from Claimant's optometrist, Thomas Petrie, stating that Claimant's vision is sufficient for computer work two-thirds of the day. (*Id.* at 999.) Claimant's corrected vision is 20/20. (*Id.* at 585.) Thus, to the extent Claimant asserts that fibromyalgia affects her vision, that argument is without merit. Claimant's application stated that she was impaired due to vision loss, among other impairments, but did not state she had fibromyalgia, so it is unclear what complaints Claimant was attributing to fibromyalgia at that time.

adult function report and testimony. Therefore, contrary to Claimant's argument, the ALJ did not rely on "his own inferences from medical records in order to . . . discount fibromyalgia as an impairment and craft an RFC without the aid of a treating or examining opinion concerning Ms. Berns' physical limitations." (Doc. 17 at 6.) Rather, the ALJ did his job and based his decision on all of the relevant evidence. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (quotation omitted). As stated above, the ALJ cited extensively to the record. These citations include citations not only to the opinion evidence, but also citations to various treatment notes from the record. (AR at 17-19.)

Claimant may be searching for a physician to diagnose her with fibromyalgia. However, the record is clear that while Claimant has pain and other impairments, the pain and impairments are related to her identified severe impairments. Even the one treatment note Claimant points to that contains the word "tenderness" does not contain a diagnosis of fibromyalgia or even possible or suspected fibromyalgia. The ALJ is obligated to develop the record only when there is ambiguous evidence or when the record is inadequate to allow the ALJ to properly evaluate the evidence. *Coleman*, 2013 WL 4069523, at *2.

Here, the record is not ambiguous. Claimant has certain physical impairments. These impairments, however, are not disabling. *See Guilliams*, 393 F.3d at 801 (explaining that a claimant's RFC is what she can still do despite her limitations). Claimant testified that she does all household chores every day, except for picking up heavy things and reaching above her head. She takes care of her three-year-old twin grandchildren half-a-day a week. Claimant has a full social life. The objective medical evidence revealed only mild findings and Claimant's course of treatment has been

conservative, consisting of medication and self-imposed rest. Claimant has been encouraged to exercise and testified that she can walk four blocks at a leisurely pace.

The record is also adequate. As discussed above, four state agency consultants and one examining psychologist provided opinions in this case. In addition, the majority of the treatment notes in the over-1000-page record are related to Claimant's pain treatment. The record contains not only treatment notes from office visits, but also results from six radiographic tests. Therefore, the record was adequate and no further opinion was necessary. The ALJ cited extensively to the record and provided proper support for his decision. I find that the ALJ's decision on this issue is supported by substantial evidence in the record as a whole.

**C.**     ***Substantial evidence supports the ALJ's decision that Claimant could perform her past relevant work.***

The decision of whether a Claimant can perform her past relevant work "is often critical and 'every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.'"  *Martin v. Sullivan*, 901 F.2d 650, 652 (8th Cir. 1990) (quoting *Nimick v. Sec. of Health & Human Servs.*, 887 F.2d 864, 866 n.2 (8th Cir. 1989)) (internal quotation omitted).  To that end, ALJs may rely on the testimony of vocational experts "concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

A claimant can return to her past relevant work if she can "perform '[t]he actual functional demands and job duties of a particular past relevant job' . . . . [or if she can] perform the 'functional demands and job duties of the occupation as generally required by employers throughout the national economy.'"  *Martin*, 901 F.2d at 653 (finding claimant not disabled because although he could not perform his past relevant work as a stockroom attendant as he had performed it at the light exertional level, there were

stockroom attendant jobs available he could perform at the sedentary exertional level) (quoting SSR 82-61); *Wagner*, 499 F.3d at 846-48, 854 (affirming decision of district court that claimant could perform job of police chief as generally performed in the national economy even if he could not perform it as he had actually performed it in his town).

Claimant argues that the ALJ's decision that she can perform her past relevant work is not supported by substantial evidence on the record and that remand is necessary for the ALJ to consider how her work history and "the variance in her activities on good and bad days impacts the evaluation of the credibility of subjective reports of limitations." (Doc. 7 at 3, 5.)

At the hearing, the ALJ presented four hypotheticals to the VE, the first of which became the RFC:

> [F]or your first hypothetical I'd like you to assume that we have a hypothetical individual of the claimant's age, education, and work experience who is able on a sustained basis to engage in light activity as defined by the regulations. However, we want our hypothetical individual to have a position to where they need never climb ladders, ropes or scaffolds; and where they need no more than occasionally to climb ramps or stairs, to stoop, kneel, crouch, crawl or balance. I'd like you to assume that our hypothetical individual is right hand dominant and that they shouldn't have any position to where they need to reach bilaterally overhead no more than occasionally and where they need handle, finger, and feel with their left, non-dominant hand no more than frequently. I'd like you to assume that our hypothetical individual should have a position where they're able to avoid concentrated exposure to extremes of cold, vibrating tools or machinery or the sorts of hazards presented by unprotected heights or dangerous elevations. If we had an individual of that constellation of abilities and limitations -- as we look at the past work summary that you prepared -- do you feel that the position that we see reflected on that document would be an appropriate fit for the individual that I've described in hypothetical l?

(AR at 108.)

The VE testified that the "person in the hypothetical could return to the past work as per the *DOT* and as performed." (*Id.* at 109.) Based on this testimony, the ALJ decided that Claimant could return to her past relevant work as actually and generally performed. (*Id.* at 21.)

Claimant argues that the ALJ's decision that she can perform her past relevant work is not supported by substantial evidence on the record as a whole because there is an apparent unresolved conflict "between the RFC limitation that Claimant 'must not reach overhead more than occasionally bilaterally' and the vocational expert's testimony that she could perform her past relevant work as generally performed—which requires frequent reaching per the Dictionary of Occupational Titles and its companion publication, the Selected Characteristics of Occupations—the as generally performed." (Doc. 17 at 3.) The Commissioner concedes that the ALJ's finding that Claimant could perform her past relevant work as generally performed is not supported in the record. (Doc. 18 at 8.) However, the Commissioner argues that the ALJ's conclusion that Claimant is able to perform her past relevant work as she actually performed it is supported by substantial evidence. (*Id.*) The Commissioner is correct. Claimant filled out a Work History Report for her medical secretary job and stated that in the position she reached 0 hours a day. (AR at 253.) Therefore, there is not a reaching requirement included in the job as Claimant actually performed it.

In spite of that, Claimant argues that she is still unable to perform the job because her impairments prevent her from doing so. Claimant states that she quit work because joint pain and headaches interfered with her ability to perform her job duties, that she reported in her initial disability report that muscle pain and fatigue limited her ability to work, and that she noted in her adult function report that she missed work due to pain and the need to take medication. (Doc. 17 at 4 (citing AR at 96, 260, 272).) However,

as discussed above, the ALJ's decisions regarding Claimant's subjective complaints are supported by substantial evidence in the record. *See Moore*, 572 F.3d at 522.

Claimant asserts that she has good days and bad days, and that her activities were more limited on bad days, which is not inconsistent with her claimed limitations. Claimant cites *Brosnahan*, 336 F.3d at 677-78 and *Ross v. Apfel*, 218 F.3d 844 (8th Cir. 2000) for support. I have already explained how *Brosnahan* is distinguishable from the instant case. *Ross* can also be distinguished. The claimant in *Ross* had sickle cell anemia that caused him severe pain and fatigue. 218 F.3d at 847. He napped at least once every day and he took multiple naps on more than half the days. *Id.* at 849. In spite of that, on his "three or four" good days a week, the claimant rated his pain at a three or four and could do some household chores and yardwork, although slowly and with frequent breaks. *Id.* at 849. However, on the days when his pain was most severe, usually two days a week, he rated his pain at a ten, took medication, and stayed in bed. *Id.* at 847, 849. On the worst days, he went to the emergency room. *Id.* at 849. Claimant's testimony was corroborated by objective medical evidence and testimony from other witnesses. *Id.* at 849-50. The Eighth Circuit found the claimant disabled because he could not maintain the attendance requirements of full time competitive employment. *Id.* at 850. In the case at bar, Claimant does housework every day, takes care of her young grandchildren and her own personal care needs, and engages in the social activities and daily activities previously discussed. Although she testified that on her bad days, which are "two days a week probably," she does not "do much" and usually "sleep[s] a lot," the lack of objective medical evidence and other physician treatment notes documenting the severity of symptoms asserted by Claimant distinguishes this case from *Ross* and supports the ALJ's decision. Thus, the ALJ's decision was not outside the available zone of choice within which he could decide this issue. *See Hacker*, 459 F.3d at 936.

I find that the ALJ properly weighed the evidence in the record and then crafted an appropriate hypothetical based on that evidence. I also find that the ALJ's decision that Claimant could perform her past relevant work as a medical secretary as she actually performed it is supported by substantial evidence in the record.

### D. Claimant failed to timely raise her Appointments Clause argument under *Lucia v. SEC*.

In *Lucia v. SEC*, the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, and, therefore, the President, a court of law, or department head must appoint them. 138 S. Ct. at 2049. Claimant argues that SSA ALJs should be treated as improperly appointed "inferior officers" like the SEC ALJs in *Lucia*. (Doc. 17 at 7-10.) Claimant asserts this Court should vacate the denial of benefits by ALJ Andrews and remand the case for decision by what she contends is a properly-appointed ALJ. (*Id.* at 7.) Claimant admits she is asserting this Appointments Clause challenge for the first time in her brief to this Court. (*Id.* at 8, 10.)

Claimant's case presents a procedural difference from most of the other cases that I have previously addressed on this issue. In this case, the Appeals Council denied review of the ALJ's decision after *Lucia* was decided on June 21, 2018. The Appeals Council denied Claimant review on July 3, 2018. (AR at 1-5.) However, that procedural difference did not change the arguments proffered by Claimant and does not change my recommendation. It does, however, change part of the final reasoning for my recommendation.

Claimant asserts that her case can be distinguished from many of the earliest cases addressing this issue because the earlier cases were decided before EM-18003 was issued by the SSA and before former Acting Commissioner Berryhill's authority lapsed, which "led the SSA to lack a Department Head that could provide a remedy for an Appointments

Clause challenge." (Doc. 17 at 7.)  For support, Claimant cites SSR 19-1p, 2019 WL 1202036, Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC)* on Cases Pending at the Appeals Council.  (Doc. 19 at 6.)  However, SSR 19-1p is inapplicable to Claimant's case because the ruling only applies to challenges timely raised before the Appeals Council or previously raised at the ALJ level.  2019 WL 1202036, at *9583; *see also Murphy v. Comm'r of Soc. Sec.*, No. 18-CV-61-LRR, 2019 WL 2372896, at *7 (N.D. Iowa April 10, 2019) (addressing SSR 19-1p and holding that claimant waived *Lucia* issue when she raised it for the first time in the district court), *appeal docketed*, No. 19-2202 (8th Cir. June 12, 2019).

Claimant also cites *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019), *affirmed*, *Cirko ex rel Cirko v. Comm'r of Soc. Sec.*, No. 19-1772, -- F.3d --, 2020 WL 370832 (3d Cir. Jan. 23, 2020); *Probst v. Berryhill*, No. 5:18-cv-130-JG, 2019 WL 1749135 (E.D.N.C. March 22, 2019), *appeal docketed*, *sub nom Probst v. Saul*, No. 19-1529 (4th Cir. May 17, 2019); and other cases from those districts and encourages the Court to adopt *Bizarre's* reasoning in this case. (Doc. 17 at 10.)  The *Bizarre* court held that it did "not believe that [the claimant] was required to raise her [Appointments Clause challenge] before the ALJ or Appeals Council in the first instance or that failure to do so worked a forfeiture of that claim." *Id.* at 425.  I respectfully disagree and decline to adopt the *Bizarre* court's holding.  Instead, I agree with the holding in *Murphy*: "[T]he court respectfully disagrees with the *Bizarre* court's holding.  This court believes that failure to raise an Appointments Clause challenge before the ALJ or Appeals Council at the agency level waives the issue on judicial review at the district court level."  2019 WL 2372896, at *7 (citing *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013); *Anderson v. Barnhart*, 344 F.3d 809, 814) (8th Cir. 2003)).

This Court has ruled in favor of the Commissioner on similar claims on several occasions.  *See Hall v. Saul*, No. 18-CV-2032-LTS-KEM, 2019 WL 5085427, at *16

(N.D. Iowa Oct. 10, 2019); *Gilbert v. Saul*, No. C18-2045-LTS, 2019 WL 4751552, at *20 (N.D. Iowa Sept. 30, 2019); *Squier v. Saul*, No. 18-CV-3026-LTS, 2019 WL 4696415, at *10 (N.D. Iowa Sept. 26, 2019); *Rollie v. Saul*, No. 18-CV-129-CJW-KEM, 2019 WL 4673220, at *10 (N.D. Iowa Sept. 25, 2019); *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR, 2019 WL 4344288, at *6 (N.D. Iowa Sept. 12, 2019); *Sexton v. Saul*, No. C18-1024-LTS, 2019 WL 3845379, at *8 (N.D. Iowa Aug. 15, 2019); *Frazer v. Saul*, No. C18-2015-LTS, 2019 WL 3776996, at *4 (N.D. Iowa Aug. 12, 2019); *Murphy*, 2019 WL 2372896, at *7; *White v. Comm'r of Soc. Sec.*, No. C18-2005-LTS, 2019 WL 1239852, at *4 (N.D. Iowa Mar. 18, 2019); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sept.14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa  Sept. 10, 2018).

In *Stearns*, this Court ruled as follows:

> The United States District Court for the Central District of California has considered *Lucia* in the Social Security context, holding that claimants have forfeited the Appointments Clause issue by failing to raise it during administrative proceedings. *See Trejo v. Berryhill*, Case. No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018). I find this holding to be consistent with [relevant precedent].  Stearns' argument that an issue need not be raised if the ALJ does not have authority to decide it does not hold water under *Lucia*. *Lucia* made it clear that, with regard to Appointments Clause challenges, only "one who makes a timely challenge" is entitled to relief.  *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder*, 515 U.S. at 182-83).
>
> In *Lucia*, the Supreme Court acknowledged the challenge was timely because it was made before the Commission. *Id.* In the context of Social Security disability proceedings, that means the claimant must raise the issue

> before the ALJ's decision becomes final. . . . *Lucia* makes it clear that this particular issue must be raised at the administrative level.
>
> Because Stearns did not raise an Appointments Clause issue before or during the ALJ's hearing, or at any time before the ALJ's decision became final, I find that she has forfeited the issue for consideration on judicial review. As such, her request for remand on this basis is denied.

2018 WL 4380984, at **5–6 (paragraph break added).

Finally, although Claimant argues that raising the issue during the administrative process would have been futile because Social Security EM-18003 prevented the ALJ from addressing the issue (Doc. 17 at 10), nothing stopped Claimant from raising the issue during the administrative process and preserving it for appeal or attempting to raise it in an amended appeal since *Lucia* was decided prior to the Appeals Council's decision in her case. In addition, Claimant's argument that former Acting Commissioner Berryhill's authority lapsed between November 2017 and April 2018, leaving the SSA with "no Department Head . . . with the power to appoint an inferior officer to hear her claim or otherwise decide her claim" much of the time it was pending (*Id.* at 9-10), is unavailing for the same reason. Nothing prevented Claimant from raising this issue in her appeal or attempting to raise it in an amended appeal once *Lucia* was announced.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm** the decision of the ALJ and **dismiss Plaintiff's case with prejudice**.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P.

72.    Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 11th day of February, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa